IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

PATRICIA PROCTOR,                            *

                             *

     Plaintiff,                            *

                             *          Civil No. TMD 16-228

     v.                            *

                             *

                             *

CAROLYN W. COLVIN,                            *

Acting Commissioner of Social Security,      *

                             *

     Defendant.                            *

                        ************

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

     Plaintiff Patricia Proctor seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3)

of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner")

denying her applications for disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act.   Before the Court are

Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 15) and

Defendant's Motion for Summary Judgment (ECF No. 16).[1]   Plaintiff contends that the

administrative record does not contain substantial evidence to support the Commissioner's

decision that she is not disabled.   No hearing is necessary.   L.R. 105.6.   For the reasons that

follow, Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).   For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."   *Id.*

# I

## Background

Plaintiff was born in 1964, has a high-school education, and previously worked as an administrative assistant, accounts payable clerk, and customer service representative.  R. at 26, 258, 262-63.  Plaintiff protectively filed an application for DIB on July 6, 2014, and for SSI on July 17, 2014, alleging disability beginning on June 8, 2014, due to severe depression, bipolar disorder, and schizophrenia.  R. at 19, 220-30, 261.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 106-61, 166-73.  On July 7, 2015, ALJ Jennifer M. Long held a hearing in Washington, D.C., at which Plaintiff, her caseworker, and a vocational expert ("VE") testified.  R. at 33-76.  On September 8, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of June 8, 2014, through the date of the decision.  R. at 16-32.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on November 24, 2015.  R. at 1-6, 14-15.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On January 26, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.      Shakuntala Dhir, M.D.**

On October 21, 2014, Shakuntala Dhir, M.D., conducted a consultative psychiatric examination of Plaintiff.  R. at 372-77.  Dr. Dhir opined, among other things, that Plaintiff "currently has mental health issues which prevent her from working."  R. at 373.

**B.      State Agency Medical Consultants**

On October 24, 2014, a state agency consultant, Timothy Ostrich, Psy.D., using the psychiatric review technique under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.09 relating to affective disorders and substance addiction disorders (R. at 109, 119).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.09.  Dr. Ostrich opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 109, 119.  Dr. Ostrich did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing.  R. at 109, 119.  Dr. Ostrich thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 110-12, 120-23) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) work in coordination with or in proximity to others without being distracted by them; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond

appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) respond appropriately to changes in the work setting. R. at 111-12, 121-22. Plaintiff otherwise was not significantly limited. R. at 111-12, 121-22. Dr. Ostrich opined:

> [Plaintiff] is able to carry out very short and simple instructions (i.e., perform one and two step tasks). [Plaintiff] is capable of working within a work schedule and at a consistent pace. [Plaintiff] would be able to maintain regular attendance and be punctual. [Plaintiff] would not require special supervision in order to sustain a work routine. [Plaintiff] can make simple decisions.

R. at 111, 121. On March 16, 2015, another state agency consultant, Frances Martinez, Ph.D., concurred with Dr. Ostrich's opinion regarding Plaintiff's functional limitations and RFC. R. at 133-37, 145-49.

**C.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

> [Plaintiff] came into the hearing crying, but then became calm, followed by a defiant attitude when asked about her friends who supply her with marijuana. Even though she indicated that she was only comfortable with her mother and caseworker, Miss Elaine, she also named several friends who visit to use drugs and was adamant about protecting them. She testified to binge drinking once or twice a month and smoking marijuana three times a week, whenever one of her friends had it. She testified to spending her days watching television and reading. She last read a self-help book a month before the hearing. She testified that she was previously active in church but no longer would attend frequently.

> Although [Plaintiff] testified to ongoing hip pain requiring the use of a cane, she also contradicted this with testimony by stating that she walked ten miles, three days a week for exercise. Additionally, she testified to sitting on the floor in her bedroom or closet for hours and getting up to go to the restroom and eat. Her activities of daily living go beyond limitations that would preclude work and include personal care without problem, preparing meals several times a week, washing dishes, vacuuming, sweeping, cleaning the bathroom, laundry, going outside daily, walking, using public transportation, shopping in stores, handling money, going out to eat, watching movies, walking in parks, and church attendance. [R. at 298-300, 302.]

R. at 24-25; *see* R. at 47-72.

### 2.    VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the unskilled, medium and light jobs of packer, laundry worker, router, and checker.[2] R. at 73-74.  According to the VE, her testimony was consistent with the *Dictionary of Occupational Titles*[3] (the "DOT").  R. at 74.  A person absent from work two days per month would not be able to maintain work.  R. at 74-75.  A person "off task" with a loss of productivity of 15% to 18% would not be employable.  R. at 75.

### III

### Summary of ALJ's Decision

On September 8, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of June 8, 2014; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* §§ 404.1567(b), 416.967(b).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* §§ 404.1567(c), 416.967(c).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R.

pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

perform other work in the national economy, such as a packer, laundry worker, router, or stock

checker.  R. at 21-27.  The ALJ thus found that she was not disabled from June 8, 2014, through

the date of the decision.  R. at 27.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: [Plaintiff is] able to perform simple, routine and
> repetitive tasks, where supervision is simple, direct, and concrete; with no more
> than occasional interaction with co-workers and supervisors and no interaction
> with the public; only occasional decision-making and judgment, with few, if any,
> changes in the work setting.

R. at 23.  The ALJ also considered Plaintiff's credibility and found that her "medically

determinable impairments could reasonably be expected to cause symptoms; however, [her]

statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible for the reasons explained in this decision."  R. at 24.  The ALJ found that, with

regard to concentration, persistence, or pace,

> [Plaintiff] has moderate difficulties.  She reports difficulty with attention and
> concentration.  At a consultative examination, she was able to spell the word
> "world" forward and backward.  She performed serial sevens and was able to
> repeat three words.  However, after five minutes her recall was zero out of three
> words.  She processed a three-step command correctly.  Test judgment was intact.
> Capacity for abstract thinking was not present, but she appeared to be of average
> intelligence.  [R at 373.]

R. at 23.

The ALJ noted Dr. Ostrich's opinion that Plaintiff could, among other things,

"understand, retain, and follow simple job instructions such as one and two step tasks."  R. at 25.

The ALJ gave "significant" weight to Dr. Ostrich's opinion "because it is supported by

[Plaintiff's] limited mental health treatment and the detailed consultative examination."  R. at 26 (citing R. at 361, 373, 381-83, 391).

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 15-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 5.  In particular, she contends that the ALJ failed to evaluate properly the opinions of Drs. Dhir, Ostrich, and Martinez.  *Id.* at 5-6.  Plaintiff further asserts that, although the ALJ determined that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment.  *Id.* at 6-7.  According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment.  *Id.* at 7-8.  Because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

## A.    ALJ's Consideration of Dr. Dhir's Opinion

Plaintiff first maintains that remand is warranted because the ALJ failed to mention or evaluate Dr. Dhir's statement that Plaintiff "has mental health issues which prevent her from working."  Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 15-1.  The burden is on the party attacking an agency's determination to show that prejudice resulted from the error, however.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009).  "Where

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)).   Here, Dr. Dhir's statement regarding Plaintiff's inability to work is not a medical opinion, but an opinion on an issue reserved to the Commissioner and thus not entitled to any special significance.   *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (per curiam) ("Rather than providing a reasoned explanation, [the treating physician] simply opined in his conclusory fashion that [the claimant] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful work activity.'   Thus, [the treating physician's] letter more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion.").   Thus, any error by the ALJ in not discussing in her decision Dr. Dhir's statement about Plaintiff's inability to work as a result of mental issues is harmless.

## B.    Plaintiff's Moderate Difficulties with Concentration, Persistence, or Pace

Plaintiff next contends that the ALJ failed to address her moderate difficulties with regard to concentration, persistence, or pace in the hypothetical questions to the VE and in the RFC assessment.   Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 15-1.   SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.   "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."   The Ruling further explains that the residual functional capacity "assessment must include a narrative

12

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's

limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four

broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the

claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of*

*extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's hypothetical question to the VE and the corresponding RFC assessment limiting Plaintiff to "simple, routine and repetitive tasks" "with no more than occasional interaction with co-workers and supervisors and no interaction with the public" (R. at 23; *see* R. at 73) do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). The limitation in the ALJ's hypothetical question and RFC assessment to "only occasional decision-making and judgment, with few, if any, changes in the work setting" (R. at 23; *see* R. at 73) accounts for Plaintiff's moderate limitation in concentration, persistence, or pace, however. *See Smith v. Colvin*, No. 7:15-CV-00234, 2016 WL 5718241, at *3 (W.D. Va. Sept. 30, 2016); *Pearce v. Colvin*, No. 2:15-CV-00032-D, 2016 WL 4574446, at *4 (E.D.N.C. July 20, 2016), *report and recommendation adopted*, No. 2:15-CV-32-D, 2016 WL 4581329 (E.D.N.C. Sept. 1, 2016). *But*

*see Thomas v. Colvin*, No. 7:15-CV-101-KS, 2016 WL 5408114, at *3 (E.D.N.C. Sept. 28, 2016); *Hagedorn v. Colvin*, No. 2:12CV85-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015). Plaintiff's contention in this regard thus is unavailing.

**C.     Opinions of State Agency Consultants**

Plaintiff also argues that the ALJ failed to include in the RFC assessment a limitation to performing one- and two-step tasks, despite giving "significant" weight to the opinions of the state agency consultants. Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 15-1. As noted in Part IV above, the Commissioner bears the burden at the final step of the five-step sequential evaluation process used to evaluate a claimant's disability claim. *Pearson*, 810 F.3d at 207. To determine whether sufficient other work exists for the claimant in the national economy, the ALJ relies primarily on the DOT. *Id.* The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* SSR 00-4p requires that the ALJ inquire, on the record, whether the VE's testimony conflicts with the DOT, and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT. *Id.* at 207-08 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). The ALJ must, by determining if the VE's explanation is reasonable, resolve conflicts before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled. *Id.* at 208 (citing same).

An ALJ has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if his testimony is consistent with the DOT. *Id.* Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT. *Id.* at 209. "[I]n many cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to

explain that, in fact, no conflict exists." *Id.* A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209-10 (citing SSR 00-4p, 2000 WL 1898704, at *2).

"In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments." *Brinkley v. Astrue*, 695 F. Supp. 2d 269, 282 (D.S.C. 2010) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). According to the DOT, the jobs of packer, laundry worker, router, and stock checker all require a reasoning level of two. DOT 920.587-018, 1991 WL 687916 (listed as "hand packager"); DOT 361.684-014, 1991 WL 672983 (listed as "laundry worker I"); DOT 222.587-038, 1991 WL 672123 (listed as "router"); DOT 299.667-014, 1991 WL 672642 (listed as "apparel stock checker"). According to Appendix C of the DOT, 1991 WL 688702, level two reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Level one reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See Hernandez v. Astrue*, No. 1:09-CV-1805 SKO, 2010 WL 5113103, at *4 (E.D. Cal. Dec. 9, 2010). "[R]easoning levels of two are consistent with limitations to simple instructions and routine tasks." *Davis v. Comm'r of Soc. Sec.*, Civil No. SAG-11-2779, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013); *see Snider v. Colvin*, Civil Action No. 7:12CV539, 2014 WL 793151, at *8 (W.D. Va. Feb. 26, 2014) ("[A] reasoning level of two is

not inconsistent with tasks that [involve] following short, simple instructions." (citing *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005))); *Sparks v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-3352, 2013 WL 5178131, at \*2 (D. Md. Sept. 12, 2013); *Dillon v. Astrue*, Civil Action No. TMD 08-2597, 2011 WL 337334, at \*5 (D. Md. Jan. 31, 2011) (performance of jobs with reasoning level of two is not inconsistent with limitation to simple, routine, repetitive tasks); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with claimant's RFC" to "simple and routine work tasks"). Thus, as Defendant correctly points out, an RFC limited to simple, routine, and repetitive tasks does not conflict with the performance of the jobs identified by the VE at the hearing.

The Fourth Circuit has held, however, that "there is an apparent conflict between an RFC that limits [a claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (per curiam); *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015); *Carpenter v. Colvin*, No. 1:13-cv-01637 (CKK/GMH), 2016 WL 946975, at \*7 (D.D.C. Feb. 24, 2016) ("The ALJ's instruction that the hypothetical plaintiff was limited to 'simple, routine, repetitive, one to two step tasks' conflicts with DOT Reasoning Level Two, which is required for both jobs identified in the VE's testimony."), *report and recommendation adopted*, Civil Action No. 13-01637 (CKK/GMH), 2016 WL 953216 (D.D.C. Mar. 14, 2016). While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to [her] conclusion,'" which the ALJ did not do so here.

*Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  Despite addressing the opinions of Drs. Ostrich and Martinez that Plaintiff's mental limitations restrict her to performing one- and two-step tasks (R. at 25-26, 111, 121, 135, 147), the ALJ's "RFC and hypothetical here are not supported by substantial evidence because it is not clear whether the omission of any limitation to one or two-step jobs was intentional or not."  *Harden v. Comm'r of Soc. Sec.*, Civil Action No. 13-906, 2014 WL 4792294, at *4 (W.D. Pa. Sept. 24, 2014).

> While the ALJ was by no means required to simply adopt all of the limitations found by the state reviewing agent, [she] was required to explain [her] basis for rejecting them if [she] chose to do so, particularly in light of the fact that [she] expressly gave significant weight to this opinion in formulating the RFC and hypothetical.

*Id.*  "Where, as here, there is potentially conflicting evidence in the record, the ALJ must explain which evidence [she] accepts and rejects and the reasons for [her] determination."  *Id.* at *5.  "The state agency psychologist, whose opinion was given significant weight, offered an opinion of a restriction not included in the RFC or hypothetical that could possibly conflict with the VE's opinion as to the positions that Plaintiff could perform."  *Id.*  "The ALJ is not necessarily obligated to accept this additional limitation, but [she] cannot ignore it.  It is the need for further explanation that mandates the remand on this issue."  *Id.*  "Likewise, while the VE's opinion may remain unchanged even with this additional restriction, that is left for the VE to decide."  *Id.*; *see Bush v. Colvin*, Civil Action No. 15-718, 2016 WL 1730534, at *1-2 (W.D. Pa. May 2, 2016); *Bobbitt v. Colvin*, No. 03:13-CV-01320-HZ, 2014 WL 2993738, at *8-10 (D. Or. July 1, 2014).

"Had the ALJ properly included [the state agency consultants'] limitation, and had the VE still identified the [packer, laundry worker, router, and stock checker jobs] as jobs the Plaintiff could perform, there would be a conflict between the representative occupations and

Plaintiff's limitations." *Bobbitt*, 2014 WL 2993738, at *9; *see Bush*, 2016 WL 1730534, at *2 n.3. The ALJ's error thus is not harmless. *See Bobbitt*, 2014 WL 2993738, at *9. Moreover, "the Fourth Circuit has declined to find harmless error where an error or omission precludes meaningful review." *Jeffries ex rel. J.J.J. v. Comm'r, Soc. Sec.*, No. JKB-15-1727, 2016 WL 3162800, at *2 (D. Md. June 7, 2016) (citing *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (per curiam); *Mascio*, 780 F.3d at 636-37); *see Radford*, 734 F.3d at 296. Although Defendant points out that the four jobs identified by the VE are "unskilled" (Def.'s Mem. Supp. Mot. Summ. J. 11-12, ECF No. 16-1),

> a limitation to unskilled work, as used by the DOT and the Commissioner's regulations, does not necessarily conflate with jobs that involve only simple one- to two-step instructions. These are two separate vocational considerations. Defining particular jobs as "unskilled" speaks more to the issue of the level of vocational preparation necessary to perform the job rather than the issue of the job's simplicity, "which appears to be more squarely addressed by the [reasoning level] ratings."

*Hardy v. Colvin*, Civil Action No. TMD 11-02793, 2013 WL 4478025, at *4 (D. Md. Aug. 19, 2013) (alteration in original) (quoting *Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004)).

In short, the Fourth Circuit has "held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 826 F.3d at 189 (alteration in original) (quoting *Radford*, 734 F.3d at 295). For the reasons stated above, the inadequacy of the ALJ's analysis frustrates meaningful review. Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is appropriate. *See Mascio*, 780 F.3d at 636.

# VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is

**DENIED**.   Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.   Plaintiff's

alternative motion for remand (ECF No. 15) is **GRANTED**.   Defendant's final decision is

**REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).   This matter is

**REMANDED** for further proceedings consistent with this opinion.   A separate order will issue.


Date: November 18, 2016                                            _____/s/_____
                                                                                   Thomas M. DiGirolamo
                                                                                   United States Magistrate Judge